UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANGELINE FLOOD,

                Plaintiff,        05-CV-0835T

      v.                   **DECISION**
                                         **and ORDER**
JO ANNE B. BARNHART,
Commissioner of Social Security

                Defendant.

_____

## INTRODUCTION

Plaintiff Angeline Flood ("the plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "the defendant") improperly denied her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments.[1] The Commissioner moves for summary judgment, arguing that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence in the record. The plaintiff opposes the Commissioner's motion.

## BACKGROUND

The claimant filed an application for DIB and SSI payments on May 21, 2002 claiming that she became disabled on June 1, 1999 due to chronic low back pain, temporomandibular joint disorder ("TMJ"), generalized pain, numbness, cataracts, and recurrent bladder infections ("UTI") (Tr. 64). The plaintiff's application was

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated July 24, 2007.

Page -1-

initially denied and she requested an administrative hearing which was held on January 28, 2004 in West Palm Beach, FL (Tr. 17, 50, 234-47).[2]  On March 23, 2005, ALJ M. Dwight Evans found that the plaintiff was not disabled (Tr. 17-24).  The plaintiff appealed the ALJ's decision and, on September 23, 2005, the Social Security Appeals denied review (Tr. 7).  The plaintiff thereafter filed this action on November 22, 2005.

## DISCUSSION

### I. JURISDICTION AND SCOPE OF REVIEW

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits.  Mathews v. Eldridge, 424 U.S. 319, 320 (1976).  Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121,

---

[2] There is a discrepancy in the record as to who conducted the administrative hearing.  While the hearing transcript lists ALJ Rueben Rivera, the Commissioner's Decision was written by ALJ M. Dwight Evans (Tr. 17-24, 234-47).  This Court has not found an explanation in the record for this discrepancy.  Because ALJ Evans states in his decision that he conducted the hearing on January 28, 2004 in West Palm Beach, Florida, and because the record consistently shows that the hearing was conducted on that date, at that location, and concerned the plaintiff, this Court will assume that the listing of "Rueben Rivera" on the hearing transcript was a typographical error.

149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard.  Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Commissioner moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure.  Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.S. § 405(g) (2007).  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  Because this court determines that the ALJ's decision is supported by substantial evidence, judgment on the pleadings is hereby granted for the defendant.

## II.  STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..."  42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments).  An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy.  §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI).  Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized.  §§ 404.1572(b) and 416.972(b).  Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in her immediate area, whether a specific job vacancy exists for her, or whether she would

be hired if she were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

- (i) if the claimant is performing substantial gainful work, she is not disabled;

- (ii) if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

- (iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

- (iv) if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

- (v) even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).  The ALJ in this case performed the required five-step evaluation and determined that: (i) the plaintiff had not engaged in substantial gainful employment since June 1, 1999; (ii) the plaintiff's "status post cataract surgery in left eye" and recurrent urinary tract infections were considered "severe" under §§ 404.1520(c) and 416.920(c); (iii) the plaintiff's conditions did not meet or

medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and; (iv) the plaintiff was able to perform the full range of "light work" under §§ 404.1545 and 416.945 which included her past relevant work.  As discussed in Section III of this Decision, the ALJ's findings adverse to the claimant in steps (iii) and (iv) of the evaluation process are both supported by substantial evidence in the record as a whole.

### III.  THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

The ALJ found that the plaintiff had the following "severe" impairments under §§ 404.1520(c) and 416.920(c): status post cataract surgery in the left eye and recurrent urinary tract infections ("UTI")(Tr. 23).  The plaintiff's low back pain, left shoulder and left knee pain, and depression were found "not severe" under the statutes (Tr. 20).

These findings are supported by substantial evidence in the record because an impairment is not "severe" if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a) and 416.921(a). The medical record shows complaints without any substantiated impairment. Also, the numbness, generalized pain, and temporomandibular joint disorder ("TMJ") that the plaintiff alleged in her disability application were not supported by substantial medical evidence in the record.

### A. The ALJ Properly Found that the Plaintiff's Alleged Back Pain was not "Severe" under SSA Regulations.

Dr. Kalosis diagnosed sacroiliac strain in November 1998 but recommended only home exercises (Tr. 123). In March 1999, x-rays were taken of the plaintiff's spine and showed only mild scoliosis (Tr. 19, 108). In September 2002, the plaintiff reported that her back pain improved with a heating pad and Biofreeze and, in spite of the pain, the plaintiff was able to do her usual household work (Tr. 142). Dr. Seshadri noted that the plaintiff's physical examination was benign except for some chest and costovertebral angle tenderness (Tr. 143). Dr. Seshadri further stated that the etiology of the plaintiff's back pain was unclear and concluded that her subjective complaints were greater than the objective findings (Tr. 19, 144).

When the plaintiff presented complaints of pain to Dr. Guerra, she initially prescribed pain medication but then refused to prescribe any more (Tr. 184-90). This was because Dr. Guerra repeatedly asked the plaintiff to obtain x-rays of her lumbar spine but the plaintiff did not do so (Tr. 19, Tr. 184-190). In July 2003, the plaintiff visited the emergency room at St. Joseph's hospital and stated that she had run out of her pain medication (Tr. 194). Her physical examination revealed only mild diffuse tenderness in her lumbar back region, her neurological examination was normal, and the doctor's discharge diagnoses did not include back pain (Tr. 196). Also, state agency reviewing physician Dr. Green concluded that the plaintiff's back pain was

not a severe impairment under §§ 404.1520(c) and 416.920(c) (Tr. 20).

### B. The ALJ Properly Found that the Plaintiff's Alleged Shoulder and Knee Pain were not "Severe" under SSA Regulations.

Regarding the plaintiff's complaints of left shoulder and left knee pain, the plaintiff made these allegations on only one occasion July 29, 2003 (Tr. 19, 194). The ALJ noted that an examination on that date revealed complaints of tenderness in both areas, but Dr. Kennedy's treatment notes described the plaintiff's shoulder pain as "diffuse" and her left knee was "stable to stress and strain" with only "mild tenderness" (Tr. 19, 195). The plaintiff's neurological examination was normal in both the upper and lower extremities and x-rays of her left shoulder and knee were unremarkable (Tr. 19, 196, 201-202). The ALJ therefore properly found that the plaintiff's complaints of left shoulder and left knee pain did not constitute "severe" impairments under §§ 404.1520(c) and 416.920(c).

### C. The ALJ Properly Found that the Plaintiff's Alleged Depression was not "Severe" under SSA Regulations.

The ALJ noted that there was no evidence that the plaintiff received any psychiatric or psychological treatment (Tr. 20). Although the plaintiff alleged depression on January 2, 2003, she noted that she had not previously taken antidepressants but said, "I feel I need something now" (Tr. 20, 188). Dr. Guerra gave the

plaintiff a starter pack of Zoloft but there was no indication that the plaintiff tried to continue treatment for depression. Id. The ALJ therefore properly found that the plaintiff's depression was not a "severe" impairment under §§ 404.1520(c) and 416.920(c).

> D. **The ALJ Properly Concluded that the Plaintiff's "Severe" Status-Post Cataract Surgery and Recurrent UTI Did Not Prevent Her from Performing Her Past Relevant Work.**

The plaintiff had several urinary tract infections ("UTIs") from December 2001 to April 2003. However, she only intermittently sought medical care for these infections, consistently failed to follow recommended treatment, and frequently switched doctors.

The plaintiff first complained of UTI symptoms in December 2001 (Tr. 120). Dr. Kalosis noted that the plaintiff had "some somewhat bizarre symptoms" with regard to frequency of urination (Tr. 120). The doctor assessed a probable UTI and prescribed Levaquin for three days. Id. The plaintiff was to return if needed, but did not do so until February 2002 when she reported continuing left lower quadrant discomfort and occasional urination frequency problems (Tr. 119, 129). At this appointment Dr. Kalosis recommended a full work-up but did not diagnose a UTI (Tr. 119). The plaintiff did not return.

One week later, the plaintiff visited Dr. Papan and complained, among other things, of left side pain (Tr. 176). Dr. Papan diagnosed cystitis and prescribed Levaquin and the painkiller Darvocet (Tr. 175). The plaintiff did not return to Dr. Papan for four months until, in June 2002, she presented with

complaints of back and side pain (Tr. 174). Dr. Papan again prescribed Levaquin and Darvocet and added Soma (Tr. 173). Several weeks later the plaintiff called Dr. Papan's office stating that she still had an infection and requested a refill of her medication. Id. Dr. Papan refused to do so without a urine test first. Id. The plaintiff never returned.

The plaintiff then waited six months before next visiting a doctor for complaints related to a UTI. In December 2002, Dr. Guerra diagnosed a UTI and prescribed Bactrim (Tr. 190). In January, the plaintiff returned with additional complaints but a urine test showed no evidence of a UTI (Tr. 188). In March 2003, the plaintiff returned with additional complaints related to a UTI and Dr. Guerra diagnosed both UTI and medical noncompliance (Tr. 186-90). The plaintiff had neither obtained a back x-ray nor visited a gynecologist despite requests from Dr. Guerra. Id. In July of 2003, the plaintiff visited St. Joseph's Hospital with further complaints of abdominal pain and, on that date, urinalysis was normal and doctors did not diagnose a UTI (Tr. 194, 196).

Regarding the plaintiff's February 2002 cataract surgery, the plaintiff presented to Dr. David Klein on December 5, 2001 with decreased visual acuity in her left eye (Tr. 139). Her vision was 20/20 in her right eye and 20/50 in her left eye with further deterioration under glaring conditions to an acuity of 20/200. Id. On February 26, 2002, Dr. Klein removed the cataract and, following surgery, her prognosis was good (Tr. 137-38, 205-08).

The plaintiff returned approximately bimonthly from March to November of 2002 with complaints of pain in her left eye (Tr. 154-69). On March 27, 2002, the plaintiff's vision was 20/20 in both eyes (Tr. 167). On May 1st her eye was "70% better" and on June 12th her visual acuity was 20/20 in the right eye and 20/25 in the left (Tr. 163). On September 17, 2002 the plaintiff reported that the problem with her left eye was better and that it only teared when reading (Tr. 156). Visual acuity in her left eye was 20/20 (Tr. 156). Dr. Klein discontinued all drops except artificial tears (Tr. 156). On November 4th, visual acuity was 20/20 in the right eye and 20/25 in the left (Tr. 154).

In March 2003 the plaintiff denied problems with her eyes (Tr. 186). During a July 2003 visit to St. Joseph's Hospital, the plaintiff noted no difficulties with her left eye (the eye that had been operated upon) and, instead, alleged chronic discomfort in her right eye only (Tr. 194). On examination, the plaintiff was wearing dark sunglasses but her eye examination was normal (Tr. 195). Doctors noted no diagnosis related to her eyes (Tr. 196). In November 2003, the plaintiff's opthamologist scheduled a neuro-opthamological evaluation, but there is no evidence of follow-up (Tr. 217).

A state agency reviewing physician determined that the plaintiff could perform work at a medium exertional level with no exertional restrictions (Tr. 22, 147-50). The ALJ determined that this opinion was reasonable based upon the evidence up to January

of 2003, but noted that additional evidence after that date persuaded him that the plaintiff's residual functional capacity ("RFC") was more limited than originally thought (Tr. 22).

The ALJ concluded that the plaintiff retained the RFC to perform the full range of light work (Tr. 23). He then reviewed the plaintiff's past relevant work and concluded that she could still perform her past relevant work because it did not exceed the "light work" exertional level (Tr. 22-23). The plaintiff was therefore not disabled within the meaning of the Social Security Act and the ALJ's findings were supported by substantial evidence in the record.

## CONCLUSION

This court finds that the Commissioner's decision was supported by substantial evidence in the record and I therefore grant judgment on the pleadings in favor of the defendant.

ALL OF THE ABOVE IS SO ORDERED.

                                              s/ Michael A. Telesca
                                              MICHAEL A. TELESCA
                                    United States District Judge

Dated:    Rochester, New York
          July 30, 2007